UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHEON ARNOLD,

                            **Plaintiff,**

             -against-

DOUG TULINO, and the UNITED STATES
POSTAL SERVICE,

                            **Defendants.**
-----------------------------------------------------------------X

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #: _____            │
│ DATE FILED: _8/5/2025_        │
└──────────────────────────────┘
```

**24-CV-04814 (GHW)(SN)**

**REPORT AND
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GREGORY H. WOODS:**

       Sheon Arnold ("Plaintiff"), proceeding *pro se*, brings an employment discrimination

action against the Postmaster General and the United States Postal Service ("USPS") (together,

the "Defendants"). Plaintiff, an African American USPS employee and a veteran, alleges that

Defendants violated various employment and civil rights statutes by rejecting his applications for

entry-level management positions because of his race, national origin, and status as a veteran.

Defendants move to dismiss the complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure. Defendants also move for partial summary judgment, pursuant

to Rule 56. I recommend that the Court GRANT the motions.

## FACTUAL BACKGROUND

       Plaintiff alleges he was repeatedly denied a promotion during his employment with USPS

due to his status as an African American veteran. Plaintiff, who is a mail carrier, claims he

applied to 98 entry-level management positions over more than 40 months. See Compl. at 20.

Plaintiff believes the "habits, routine practices, and violation(s) of federal/state laws and statutes"

deprived him of opportunities for professional advancement. Id. at 8. Listing numerous jobs that

he applied to and either did not receive an interview for or was not selected for, Plaintiff alleges he was repeatedly prevented from advancement and promotion opportunities. See generally id. Plaintiff believes "there is potentially a pattern of employment discrimination" in USPS's hiring practices. Id. at 8. The alleged pattern or practice is that USPS would post a job opportunity, cancel the opportunity after Plaintiff applied, and repost the opportunity. Id. at 19.

Plaintiff also challenges USPS's interview and selection process. He describes the process as starting with a "telephonic interview" related to an applicant's qualifications. Compl. at 11. That interview consists of two decision-making questions, one employee focus question, and six operations management questions. Id. In one instance, Plaintiff was invited for a telephone interview, and the interviewer "mentioned that he'd be in touch." Id. Months passed, Plaintiff received no additional information, and USPS reposted similar advancement opportunities. Id. Plaintiff was thus passed over for a promotion.

In another example, he had a "one-on-one interview," which Plaintiff describes as more employee driven. Compl. at 14. The interviewer asked Plaintiff what he would do if a traffic violation occurred during an on the road evaluation. Plaintiff responded, "stop the driver at a safe point, mention the infraction(s) observed, and continue evaluation." The interviewer replied, "no one has ever had such response … that's right" and ended the interview without any questions. Id. The interviewer promised a decision on Plaintiff's application by close of business. Months later, Plaintiff had not been selected. Id. Plaintiff believes the position went to a candidate "with lesser ratings." Id. at 26.

Plaintiff says he was "more capable and available" and "possessed stronger qualifications" than other candidates for many of the jobs to which he applied, demonstrating that the agency "may've used a selection criterion which has discriminatory tendency, and is not

consistent with business necessity." Compl. at 15. Plaintiff also believes USPS improperly did not consider his status as a veteran and entitlement to veterans' preferences in hiring. Id. at 7, 15. He has a "gut feeling that some sort of employment discrimination had taken place." Id. at 7.

In his complaint, Plaintiff alleges violations of Title VII of the Civil Rights Act; 42 U.S.C. §§ 1981, 1983; New York Constitution, Article V; Veterans' Preference Act of 1944; 38 U.S.C. §§ 4214, 11521; Title XIII of the Homeland Security Act; and Jobs for Veterans Act; 5 U.S.C. §§ 2301(b)(2), 2302(b)(1)(A), 2302(2)(A)(ii), 2302(1)(a), 2302(4), 2302(11)(a)(b). Plaintiff also broadly references violations of "New York State Human Rights Law" and "NYC Human Rights Law" without delineating which sections of those laws he believes have been violated. He mentions the "Rule of Three" and "veteran Passovers," without citing specific laws, constitutional provisions, or precedent. Plaintiff seeks an order directing Defendants to hire and/or promote him and awarding him retroactive pay and backpay in the amount of $328,000 (his approximation of the amount of loss and benefits due), punitive damages, compensatory damages, and back pay for lost opportunities and benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint alleging discrimination based on his race and national origin with the U.S. Equal Employment Opportunity Commission ("EEOC" or "Commission") on August 17, 2022.[1] Compl. at 31. His EEOC complaint alleged that, between March and May 2022, Plaintiff was not selected for 17 positions. Id. at 32. His complaint listed 17 positions, but the Commission determined that his contact with an EEO counselor was untimely with respect to

---

[1] Plaintiff did not provide a copy of his EEO complaint. He attached to his federal complaint the EEOC's decision on Plaintiff's appeal, which details the procedural background of the EEOC process. Compl. at 31-38. The Court relies on this decision to recount the applicable factual and procedural history. Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (courts may consider documents and exhibits attached to the complaint or incorporated by reference).

all but three of those positions. Id. An investigation took place, and Plaintiff was provided a copy of the report of investigation and notice of his right to request a hearing before an EEOC Administrative Judge. Plaintiff requested a hearing, but the Administrative Judge issued a decision without holding a hearing. Id.

According to the decision on appeal, the Administrative Judge found that USPS articulated legitimate, nondiscriminatory reasons for not interviewing Plaintiff because he consistently scored "0" when answering questions about his Knowledge, Skills, and Abilities ("KSAs"). Id. Nobody who was ultimately selected for the positions scored "0" on their KSAs test. Id. Selecting officials stated that they chose people whose qualifications were deemed to be superior to Plaintiff's. Other applicants who also scored "0" on their KSAs were not given interviews, either. Id. Plaintiff had not provided evidence showing that his qualifications were "plainly superior" to the individuals who were ultimately selected for the position. Id. The Administrative Judge issued a decision in favor of the Defendants by summary judgment on September 18, 2023.

On appeal, the Commission applied the same standard applied in federal court on a motion for summary judgment. Compl. at 33 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). The Commission found that Plaintiff had not established any material fact in dispute and affirmed the Administrative Judge. Id. Specifically, the Commission applied the McDonnell Douglas framework to conclude that Plaintiff had not set forth any evidence to establish that the agency's non-discriminatory reasons for its actions were pretextual. Instead, Plaintiff alleged a "gut feeling" of discrimination and referenced "institutional discrimination" and "systemic racism." Id. 34-35. "However, beyond these bare assertions, the Complainant has not established that his race or national origin

played any role whatsoever in the decisions made." Id. at 35. Thus, the Commission issued its final order on March 19, 2024, which notified Plaintiff of his right to sue.

Plaintiff timely filed his complaint on June 21, 2024. Defendants move for summary judgment on Plaintiff's Title VII non-selection claims for 58 postings because Plaintiff failed to administratively exhaust these claims. Defendants further move to dismiss the entire complaint.

## DISCUSSION

### I.    Employment Discrimination under Title VII

The thrust of Plaintiff's complaint is an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. "Title VII is the exclusive remedy for [employment] discrimination by the federal government on the basis of race, religion, sex or national origin." Briones v. Runyon, 101 F.3d 287, 289 (2d Cir. 1996). The Court liberally interprets Plaintiff's complaint to assert 98 separate claims under Title VII for each of the positions he references in the complaint. The evidence demonstrates, however, that Plaintiff applied for only 61 positions. Def. R. 56.1 Statement ¶ 3. Additionally, Plaintiff did not exhaust his administrative remedies for 58 of those 61 positions. As to those 58 positions, Defendants move for summary judgment; as to the remaining three positions, Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim.

### A.  Summary Judgment on Title VII Claims as to 58 Job Postings

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The moving party bears the initial burden of establishing that no

genuine issue of material fact exists. Id. at 256-57; see also Celotex, 477 U.S. at 325. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex, 477 U.S. at 322-23).

Then, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). "When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party must produce more than a "scintilla of evidence," Anderson, 477 U.S. at 252, and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." (quoting Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996))). In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

The court must afford "special solicitude to *pro se* litigants," especially in the summary judgment context. Fredricks v. Shaheen, No. 22-2480, 2025 WL 1949898, at *1 (2d Cir. July 16, 2025) (quoting Rosa v. Doe, 86 F.4th 1001, 1007 (2d Cir. 2023)). Because it may not be obvious

to a layman that a motion for summary judgment should be opposed with affidavits contradicting the movant's facts, the Court of Appeals requires district courts to "apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment." Id. (quoting Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620 (2d Cir. 1999)). Southern District of New York Local Rule 56.2 requires that a represented party moving for summary judgment against a *pro se* party must serve and file a "Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment." S.D.N.Y. Loc. Civ. R. 56.2.

### 1. Administrative Exhaustion under Title VII

To bring a lawsuit under Title VII, a plaintiff must first exhaust available administrative remedies by filing a timely complaint with the EEOC. 42 U.S.C. § 2000e-5(f)(1); Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018). Administrative exhaustion of Title VII claims requires that an aggrieved employee comply with EEO regulations. See Lucenti v. Potter, 432 F. Supp. 2d 347, 356 (S.D.N.Y. 2006). EEO regulations mandate that a federal employee who believes he has suffered discrimination must consult an EEO counselor within 45 days of the alleged discriminatory acts. 29 C.F.R. § 1614.105(a)(1). The employee may file a formal complaint with the agency within 15 days after he receives an EEO counselor's notice of final interview and right to file a complaint. Mathirampuzha v. Potter, 548 F.3d 70, 75 (2d Cir. 2008). If and when an employee receives a final agency decision on his EEO complaint, the employee may file an action in federal court within 90 days of notice of the final agency decision, or after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. Id.

A federal "employee may not file in federal court until the administrative EEO process has been completed," and "[c]ourts must strictly adhere to such procedural requirements for gaining access to the federal courts," Lucenti, 432 F. Supp. 2d at 357. "The administrative

exhaustion requirement applies to *pro se* and counseled plaintiffs alike." <u>Fowlkes v. Ironworkers</u> <u>Loc. 40</u>, 790 F.3d 378, 384 (2d Cir. 2015). Failure to exhaust administrative remedies is an affirmative defense properly considered on a motion for summary judgment. <u>See</u> <u>Hardaway v.</u> <u>Hartford Pub. Works Dep't</u>, 879 F.3d 486, 491 (2d Cir. 2018). While Title VII requires administrative exhaustion, the requirement is "a mandatory but nonjurisdictional prerequisite to suit." <u>Fowlkes</u>, 790 F.3d at 385-86.

### 2.  Application

Partial summary judgment is proper on the Title VII claims as to 58 job postings. Defendants filed and served the Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment on Plaintiff the same day they filed their motion for partial summary judgment. ECF Nos. 37, 38. Plaintiff was apprised of the consequences of failing to properly respond to Defendants' motion. He titled his opposition brief "Objection to Summary Judgment," cited language from Rule 56, and cited case law about the appropriateness of summary judgment. Therefore, Plaintiff had sufficient notice of the summary judgment motion and has demonstrated an understanding of Rule 56's requirements.

Defendants moved for summary judgment on the basis that Plaintiff did not exhaust his Title VII claims by failing to timely contact his EEO counselor. Defendants provided undisputed evidence showing that Plaintiff applied for only 61 of the 98 positions listed. Def. R. 56.1 Statement ¶ 3. Plaintiff did not initiate contact with an EEO counselor within 45 days of the allegedly discriminatory acts for 58 of those 61 job postings. <u>Id.</u> For the three remaining job postings, Plaintiff contacted his EEO counselor and exhausted his administrative remedies. <u>Id.</u>; Compl. at 32 (indicating that the EEOC found that EEO counselor contact was timely as to only three of the seventeen positions listed in Plaintiff's EEO complaint). This evidence is sufficient

to meet Defendants' burden of showing the absence of a genuine issue of material fact for 58 of the 61 job postings. See, e.g., Khaleel v. Potter, 307 F. App'x 527, 528 (2d Cir. 2009) (affirming the district court's grant of summary judgment of a *pro se* postal service employee's race-based discrimination and failure-to-hire lawsuit because the employee had not demonstrated administrative exhaustion).

Plaintiff's opposition does not dispute that he applied to only 61 of the 98 job postings listed in his complaint. He explains that he referenced all of the postings to show a "systemic routine practice" of listing jobs, removing them, and relisting them, which Plaintiff believes is a discriminatory practice. Opp. at 1. Plaintiff also does not dispute his failure to exhaust. He in fact admits that "some listing[s] were outside statutory limits," but he claims that his failure to be selected as to those listings would still serve as "background evidence" that tends to prove certain claims. Id. Plaintiff bore the burden of "com[ing] forward with admissible evidence sufficient to raise a genuine issue of fact" to avoid summary judgment. Simsbury-Avon Pres. Club, Inc., 575 F.3d at 204. Instead of providing such evidence, Plaintiff merely rested on the allegations in his pleadings. Because Plaintiff cannot provide evidence that he has exhausted his administrative remedies, partial summary judgment is appropriate on his Title VII claims for the 58 job postings to which he applied but did not timely contact an EEO counselor. See Morales v. Brann, No. 20-CV-10126 (VEC)(SDA), 2022 WL 18108561, at *6 (S.D.N.Y. Dec. 15, 2022), report and recommendation adopted, 2023 WL 35255 (S.D.N.Y. Jan. 4, 2023) (granting summary judgment where "Plaintiff has not presented any evidence that he exhausted his administrative remedies or that such remedies were unavailable").

Further discovery on the issue of administrative exhaustion is not appropriate because there are no additional facts Plaintiff can discover to overcome his failure to exhaust. See

Richard v. LeClaire, No. 9:15-CV-00006 (BKS)(TWD), 2019 WL 5197041, at *1 n.2 (N.D.N.Y. May 6, 2019) ("[Because] the Court is recommending summary judgment in Defendants' favor for failure to exhaust administrative remedies, additional discovery would be of no benefit to Plaintiff."). Deferring a decision on the motion for summary judgment to allow discovery into administrative exhaustion is especially inappropriate where Plaintiff does not contest that he failed to exhaust. Therefore, I recommend granting the motion for partial summary judgment on the Title VII claims relating to 58 job postings.

### B.  Dismissal of All Other Title VII Claims

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a legally sufficient claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating a complaint under this standard, a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 556.

While the plausibility standard "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (internal quotation marks omitted); see also Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 709 (2d Cir. 2002) (stating that a court need not give "credence to [a] plaintiff's conclusory allegations"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a

cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6). Id. (internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

Where a plaintiff proceeds *pro se,* their complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). When addressing a motion to dismiss, "courts must construe [a *pro se* complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145-46 (2d Cir. 2002). Courts "are obligated to draw the most favorable inferences that [a *pro se*] complaint supports," but "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

### 1. Discrimination under Title VII

To state a claim of discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse employment action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Id. at 87. There must be "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). A Title VII failure to promote claim follows the Supreme Court's McDonnell Douglas framework for establishing a *prima facie* case: plaintiff must allege that (1) he is a member of a protected class, (2) he "applied and was qualified for a job for which the employer was seeking applicants," (3) he was rejected for the position, and (4)

the position remained open and the employer continued seeking applicants that had plaintiff's same qualifications. Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Plaintiff bears the burden of making out a *prima facie* case. Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).

### 2. Application

Plaintiff has not alleged sufficient facts to establish a *prima facie* case of discrimination under Title VII. He provides no direct evidence of discrimination. There are no allegations that anyone involved in the interview or hiring process made any comments—let alone disparaging comments—to Plaintiff about his race or national origin. Plaintiff has provided only indirect evidence. By his own words, Plaintiff merely has a "gut feeling" that discrimination has occurred and believes there is "potentially a pattern of employment discrimination." Compl. at 7-8. He says he is "not certain" but the feeling that he has been discriminated against "needs to be b[r]ought up and not fester." Id. at 7. Gut feelings and potential patterns of discrimination are insufficient. See Moore v. City of New York, 745 F. App'x 407, 409 (2d Cir. 2018) ("A mere mention of feeling 'discriminated against' is not enough" to establish discrimination). For the 98 job postings Plaintiff included in his complaint, he did not describe if and when he applied to each job, whether he was interviewed, and whether there is evidence of discrimination in each instance. He has not set forth the requisite facts to plead a *prima facie* case.

Walking through the McDonnell Douglas framework, Plaintiff has established the first requirement, that he is a member of a protected class. As an African American, he has established membership in a protected class based on his race (and possibly national origin). But he has not established that he applied for *and was qualified for* a job for which Defendants were seeking applicants. From the documents Plaintiff submitted along with his complaint,

Defendants did not promote him despite his many applications because his qualifications did not suffice. On a series of knowledge, skills, and abilities questions, Plaintiff "consistently scored '0.'" Compl. at 34. No other applicant who scored a "0" for any question was considered for an interview. Id. There is not even "minimal support" that the failure to interview or hire Plaintiff was because of his race. Littlejohn, 795 F.3d at 311; see also Mitchell v. New York City Dep't of Educ., No. 20-CV-1555 (PGG), 2022 WL 621956, at *5 (S.D.N.Y. Mar. 3, 2022) (a complaint that "merely describes adverse employment actions … without linking those adverse employment actions" to membership in a protected class is insufficient to establish a *prima facie* case). The facts Plaintiff provided suggest that he was not selected because he lacked the proper qualifications, not because of his race.

Plaintiff's most specific examples concern a few interviews that he believed went well but did not result in selection. Plaintiff cited statements from his interviewers that tend to indicate the interviewers enjoyed speaking with him, believed he answered questions well, and did not raise specific concerns in the interviews. See Compl. at 11, 14. His subjective feelings about his interview, however, are insufficient to make out a *prima facie* case. In Sellick v. Agency-Castle Point, a plaintiff similarly believed her interview had gone well, so she assumed the reason she was not chosen must have been discrimination. No. 09-CV-6616 (DLC), 2010 WL 2813431, at *7 (S.D.N.Y. July 16, 2010). But such "speculation and conjecture" was insufficient to establish a *prima facie* case of discrimination. Id.

In a few parts of his complaint, Plaintiff alleges that some positions to which he applied went to candidates with "lesser ratings." Compl. at 26. But he provides no factual support for these claims. He does not list the qualifications of the people who were promoted over him or describe whether they were of different races. Plaintiff provides no facts about the people who

were selected for the jobs to which he applied. Indeed, the Commission's decision on Plaintiff's appeal indicates that he was not qualified for the job, and no candidate who scored a "0" on their KSAs, like Plaintiff, received interviews. Compl. at 34.

Because Plaintiff has not alleged any evidence that he was not promoted because of his membership in a protected class, he has not established a *prima facie* case of discrimination under Title VII. The Title VII claim should be dismissed for failure to state a claim.

## II.    Dismissal of All Other Claims for Failure to State a Claim

Defendants move to dismiss all other claims for lack of subject matter jurisdiction under Rule 12(b)(1). Defendants argue that certain statutes cannot be asserted against federal employers, and others do not provide a private right to sue. The Court agrees with Defendants that these claims should be dismissed but believes the proper basis for doing so is for failure to state a claim under Rule 12(b)(6), rather than for lack of subject matter jurisdiction under Rule 12(b)(1).[2]

The Supreme Court has clarified that "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014) (emphasis in original) (internal quotation marks omitted). Because Defendants do not claim that the Court lacks the power to adjudicate the case but rather that the claims cannot be asserted against the federal government, the Court considers Defendants' arguments under the rubric of Rule 12(b)(6). See also Sung v. DeJoy, No. 22-CV-07682 (HG)(LB), 2024 WL 4107212, at *6 (E.D.N.Y. Sept. 5, 2024) (collecting cases).

---

[2] Defendants do not move to dismiss these claims on sovereign immunity grounds, which would be a dismissal for lack of subject matter jurisdiction. See Cangemi v. United States, 13 F.4th 115, 134 (2d Cir. 2021).

### A.  Claims that Do Not Apply to Federal Employers

Plaintiff cannot assert a claim for employment discrimination under 42 U.S.C. § 1981.

Section 1981 prohibits racial discrimination in contracting and applies to only private employers.

See Nghiem v. U.S. Dep't of Veterans Affs., 451 F. Supp. 2d 599, 603-04 (S.D.N.Y. 2006),

aff'd, 323 F. App'x 16 (2d Cir. 2009) (dismissing federal employee's § 1981 claim). "Courts in

this circuit consistently dismiss claims under § 1981 brought by federal employees alleging

employment discrimination against their federal employers . . . ." Id.; see e.g., King v. U.S.

Postal Serv., No. 01-CV-8876 (GEL), 2002 WL 1067825, at *3 (S.D.N.Y. May 29, 2002)

(dismissing a § 1981 claim against the USPS because the statute does not protect against

discrimination under federal law); Hughes v. U.S. Postal Serv., 700 F. Supp. 779, 783 (S.D.N.Y.

1988) (same).

Section 1983 allows individuals to sue state and local officials, acting under color of state

law, for violating the U.S. Constitution or federal law. 42 U.S.C § 1983. Courts have "long

construed the phrase 'under color of state law' as used in . . . 42 U.S.C. § 1983, to apply only to

state actors, not federal officials." Dotson v. Grisea, 398 F.3d 156, 162 (2d Cir. 2005). See also

Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.4 (2d Cir. 1991) ("An action brought pursuant

to 42 U.S.C. § 1983 cannot lie against federal officers.") (internal citations omitted); Nghiem,

451 F. Supp. 2d at 605 ("Actions of the federal government or its officers are exempt from the

proscriptions of § 1983."). Accordingly, Plaintiff fails to state a § 1983 claim against Defendants.

Plaintiff cannot assert claims against his federal employers under the New York

Constitution or New York State law. The New York State Constitution permits actions against

only state actors who are acting under color of state law, not against federal officials acting under federal law.[3] Hightower v. United States, 205 F. Supp. 2d 146, 154 n.4 (S.D.N.Y. 2002).

The New York State Human Rights Law ("NYSHRL") prohibits discrimination based on race, national origin, military status, and other protected grounds. N.Y. Exec. Law § 296(1)(a). The New York City Human Rights Law ("NYCHRL") is the city analogue, which prohibits discrimination on the basis of race, national origin, status as a veteran, and other protected grounds. N.Y.C. Admin. Code § 8-107(1)(a). The claims under NYSHRL and NYCHRL, like the claims under 42 U.S.C. §§ 1981 and 1983, are "unavailable to persons asserting claims of discrimination … arising from federal employment." Williams v. Soc. Sec. Admin., No. 1:23-CV-2348 (LTS), 2023 WL 3728375, at *5 (S.D.N.Y. May 30, 2023); Moore v. DeJoy, No. 18-CV-9967 (JPC), 2021 WL 4523503, at *5 (S.D.N.Y. Sept. 30, 2021) (dismissing a USPS mail carrier's discrimination claims under NYSHRL and NYCHRL).

### B. Claims that Contain No Private Right of Action

Plaintiff sues under several statutes that do not have a private right of action. A private right of action gives individual plaintiffs the right to sue to enforce federal laws, but this right to sue must be expressly created by statute. Alexander v. Sandoval, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress."). If a federal statute does not expressly provide a private right of action, then an action pleaded under that statute is "typically subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) . . . for failure to state a claim." Fair v. Verizon Commc'ns Inc., 621 F. App'x 52, 53 (2d Cir. 2015).

---

[3] Plaintiff cited the following language from Article V, section 6 of the New York Constitution: "appointment and promotion[s] in the civil service of the state and all the civil divisions thereof[,] including cities and villages, shall be made according to merit and fitness to be ascertained, as far as, practicable . . . ." Compl. at 9 (citing N.Y. Const. art. V, § 6). This provision applies to state employees, not federal employees.

**The Veterans' Preference Act ("VPA").** The VPA provides that certain veterans are entitled to preference over others in hiring for some federal government jobs. See 5 U.S.C. §§ 2108 et seq. But the statute does not create a private right of action under which Plaintiff may sue. Philippeaux v. N. Cent. Bronx Hosp., 871 F. Supp. 640, 647-48 (S.D.N.Y. 1994) (finding no private right of action in the Veterans' Preference Act). Because nothing in the text of the statute gives Plaintiff the right to sue, Plaintiff's claim under the VPA must be dismissed for failure to state a claim.

**The Vietnam Era Veterans' Readjustment Assistance Act ("VEVRAA").** VEVRAA is another statute aimed at providing preferences for certain veterans in federal employment. The statute directs that parties contracting with the United States shall "take affirmative action to employ" certain veterans. 38 U.S.C. § 4212(a). VEVRAA does not create a private right of action. Phillips v. Merchants Ins. Grp., 990 F. Supp. 99, 101 (N.D.N.Y. 1998) (citing Antol v. Perry, 82 F.3d 1291, 1298 (3d Cir. 1996)), see also Phillips v. 7912 Merchants Ins. Grp., 173 F.3d 845 (2d Cir. 1999) (dismissing plaintiff's appeal of Phillips, 990 F. Supp. 99, but noting that, if the court had jurisdiction, it would affirm the district court judgment dismissing a VEVRAA claim because VEVRAA does not create a private right of action). Because no private right of action exists to sustain this claim in federal court, Plaintiff's VEVRAA claim must be dismissed under Rule 12(b)(6).

**The Jobs for Veterans Act ("JVA").** The JVA amended aspects of VEVRAA, for example, by raising the dollar threshold of federal contracts covered by VEVRAA and modifying certain definitions. Pub. L. No. 107-288. But the JVA amendments to VEVRAA did not add a private right of action. Id.; Seay v. Tenn. Valley Auth., 339 F.3d 454, 473 (6th Cir. 2003). Therefore, Plaintiff's JVA claim must be dismissed.

**The Civil Service Reform Act ("CSRA").** CSRA creates a process for administrative and judicial review of specific adverse actions employers take against certain federal employees. 5 U.S.C. §§ 2301, et seq.; Elgin v. Dep't of Treasury, 567 U.S. 1, 5 (2012). Sections 2301 and 2302 of the statute establish merit system principles and "prohibited personnel principles" that proscribe discrimination. See United States v. Fausto, 484 U.S. 439, 446 (1988). Plaintiff alleges claims under various subsections of 5 U.S.C. § 2301 and 5 U.S.C. § 2302. These include: 5 U.S.C. §§ 2301(b)(2), 2302(b)(1)(A), 2302(2)(A)(ii), 2302(1)(a), 2302(4), and 2302(11)(a)(b). Compl. at 4, 9. Of these, only subsections 2301(b)(2) and 2302(b)(1)(A) exist. Regardless, there is no private right of action for a claim under any part of either section 2301 or 2302. Milano v. Astrue, No. 05-CV-6527 (KMW)(DCF), 2008 WL 4410131, at *43 (S.D.N.Y. Sept. 26, 2008); Ercole v. LaHood, No. 07-CV-2049 (JFB)(AKT), 2010 WL 1286317, at *16 (E.D.N.Y. Mar. 30, 2010); see also Dotson, 398 F.3d at 164 n.3 (noting that these sections of the CSRA do not provide for judicial review).

Additionally, covered employees must pursue relief through the Merit Systems Protection Board ("MSPB"). Elgin, 567 U.S. at 6. Appeals from the MSPB are taken directly to the Court of Appeals for the Federal Circuit. Id. ("The Federal Circuit has 'exclusive jurisdiction' over appeals from a final decision of the MSPB."). Because there is no private right of action under the CSRA, Plaintiff has not shown that he requested a hearing before the MSPB, and any appeal from an MSPB hearing would have to be taken to the Court of Appeals for the Federal Circuit, these claims must be dismissed.

**Executive Order Claims.** Plaintiff also asserts a claim under 38 U.S.C. § 11521. This section does not exist, but the Defendants interpreted this reference to be asserting a claim under Executive Order 11521. This Executive Order required agencies to make "veterans readjustment

appointment[s]" for certain qualified, covered veterans who served during the Vietnam War.
Exec. Order 11521. The Court assumes Plaintiff is attempting to allege a claim under this
Executive Order. An Executive Order does not create a private right of action unless it has a
"specific foundation in Congressional action and is intended to create a private right of action."
Flecha v. Smithsonian Inst., No. 97-CV-4747 (RO), 1998 WL 199947, at *4 (S.D.N.Y. Apr. 24,
1998); see also Ruotolo v. Town of New Paltz, No. 1:22-CV-0169 (LEK)(DJS), 2023 WL
2500655, at *21 (N.D.N.Y. Mar. 14, 2023) ("[A]n executive order is privately enforceable only
if it is issued pursuant to a statutory mandate or delegation of congressional authority.").
Executive Order 11521 does not create a private right of action, so this claim must be dismissed
for failure to state a claim.

### C. Claims that Plaintiff Has Not Exhausted

"[F]ederal courts should refrain from adjudicating a controversy if the party bringing suit
might obtain adequate relief through a proceeding before an administrative agency." Washington
v. Barr, 925 F.3d 109, 116 (2d Cir. 2019). If a statute prescribes that a plaintiff should first file a
complaint with the relevant administrative agency, the plaintiff cannot skip that step and directly
pursue relief in federal court.

Any claim under Veteran's Employment Opportunities Act ("VEOA") must be dismissed
because Plaintiff has not exhausted administrative remedies. While Plaintiff did not name the
VEOA in his complaint or specifically cite the code sections under which it arises, he broadly
referenced "Title 5 U.S.C." Compl. at 9. Given Plaintiff's factual allegations and his other
claims, the Court liberally interprets that reference to mean that Plaintiff intended to bring a
claim under VEOA, which is contained in 5 U.S.C. §§ 3330a, et seq.

VEOA provides remedies for a preference-eligible veteran "who alleges that an agency has violated … [his or her] rights under any statute or regulation relating to veterans' preference." 5 U.S.C. § 3330a(a)(1)(A). To remedy violations of the statute, an eligible employee must file a complaint with the Department of Labor. Any appeal is taken to the MSPB. Id. § 3330a(d). A plaintiff may terminate administrative proceedings and file a case in United States District Court, but not until at least 121 days have passed since the appeal was filed with the MSPB or the MSPB has issued a judicially reviewable decision on the merits. Id. § 3330b(b); Conyers v. Rossides, 558 F.3d 137, 148-49 (2d Cir. 2009). Here, Plaintiff has not established these prerequisites to filing suit. Because he has not alleged that he filed a complaint with the Department of Labor or appealed to the MSPB, Plaintiff's VEOA claim must be dismissed.

## LEAVE TO AMEND

Rule 15(a)(2) requires that leave to amend be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Generally, a *pro se* litigant should be granted leave to amend to cure any deficiencies in a complaint. The Court of Appeals cautions that when addressing a *pro se* plaintiff, a district court should not dismiss the complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)). But when repleading would be futile, a district court need not grant leave to amend. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (explaining that leave to replead would be futile where a liberal reading of the complaint did not suggest that "plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

With respect to most of Plaintiff's claims, he cannot amend to cure the deficiencies that warrant their dismissal. His claims under § 1981, § 1983, and State law do not apply to federal employees, so there are no additional allegations Plaintiff can plead to sustain these causes of action. See Scalpi v. Town of East Fishkill, No. 14-CV-2126 (KMK), 2016 WL 858925, at *5 n.8 (S.D.N.Y. Feb. 29, 2016) (where defendant could not be deemed a state actor, plaintiff could not plausibly replead a 42 U.S.C. § 1983 claim). For the statutes Plaintiff cited that do not create private rights of action, there are similarly no additional facts Plaintiff can plead to state a cognizable claim upon which relief may be granted. See Harris v. TD Ameritrade, Inc., 837 F. App'x 841, 843 (2d Cir. 2021) (finding no error in the district court's denial of a leave to amend where the authority on which Plaintiff would rely did not create a private right of action); Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (denying leave to amend as futile because better pleading could not cure the fact that plaintiff's claims under certain statutes lacked private rights of action).

The Court should grant summary judgment on Plaintiff's unexhausted Title VII claims (as to 58 job postings). Plaintiff has been provided meaningful notice of the consequences of failing to offer facts to establish a genuine dispute as to these claims and has failed to do so. Accordingly, the Court should enter judgment and not allow him to replead.

With respect to his Title VII claims related to the remaining postings, it is a closer question whether to grant leave to amend. On the one hand, Plaintiff was clearly advised during the EEO process of the legal standard to establish race discrimination and the need to set forth *facts* to establish that the Defendants' decisions were not pretextual. The Commission affirmed the dismissal of his complaint because his complaint merely alleged a "gut feeling" and

referenced "institutional discrimination" and "systemic racism." These "bare assertions" were not enough for his EEOC appeal, and they are not enough in federal court.

But the Court of Appeals has repeatedly instructed the district courts that leave to amend should be granted "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citing cases). Although Plaintiff has failed to meet his pleading burden with respect to the exhausted claims related to three job postings, amendment cannot be said to be legally futile at this stage. Accordingly, I recommend that Plaintiff be permitted to amend his complaint solely to allege facts that might tend to plausibly allege a Title VII claim as to only the three job postings for which he has exhausted his administrative remedies. To avoid unnecessarily burdening Defendants, I recommend that the Court review Plaintiff's amended complaint before requiring a responsive pleading. If Plaintiff cannot allege facts that plausibly state a claim for discrimination with respect to these three job postings, I further recommend that the Court order Plaintiff to show cause as to why his claims should not be dismissed.

## CONCLUSION

I recommend that the Court GRANT Defendants' motion for summary judgment as to certain of Plaintiff's Title VII claims, and GRANT Defendants' motion to dismiss the complaint in its entirety. I further recommend that Plaintiff be giving an opportunity to file an amended

complaint solely with respect to those three job postings for which Plaintiff has exhausted his administrative remedies.[4]

SARAH NETBURN
United States Magistrate Judge

DATED:    August 5, 2025
          New York, New York

*          *          *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Gregory H. Woods if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Woods. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).

---

[4] Should the Court grant Plaintiff this limited leave to amend, Plaintiff is encouraged to contact the City Bar Justice Center's Federal *Pro Se* Legal Assistance Project for free legal assistance. The Project can be reached at (212) 382-4794 or online at https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project/.